5-6, Sandy Carreras Morales v. Silgan Containers Manufacturing Puerto Rico, LLC. At this time, would counsel for the appellant please introduce himself on the record to begin. Good afternoon, your honors. My name is Juan Rafael Gonzalez-Munoz, and I represent Mr. Sandy Carreras in this appeal. Mr. Carreras admits that the judgment needs to be reversed for two reasons. First, there is direct evidence of age discrimination in this case that the court did not consider or ruled that it was not. And also, even if we were to go to the McDonnell Douglas framework, Silgan did not meet its burden of establishing that Mr. Carreras was disqualified exclusively for his review score. In terms of the direct evidence of age discrimination, it's really interesting that the court and Silgan do not address something that Mr. Carreras has been pounding on, and it's that in 2017, before they started the search, there was an institutional decision at Silgan that they were going to look for a PRPM, a Puerto Rico plant manager, that was disqualified. And that was a local, and who could provide longevity in the position. Silgan had a root problem, which was that after the first two plant managers, they were stateside employees. So the district court essentially found that the word longevity was ambiguous and didn't necessarily serve as a proxy for age. Well, the thing is, Your Honor, that I understand that the court made a mistake in the sense that it failed to inform itself when determining the context in which the comment was made. Silgan had a root problem, which was that managers were running back to the United States after two years, and they wanted someone to be there for a long time. So they decided to get a local who could, I'm sorry, a local who could provide longevity. The longevity, in this case, there was no need to go into the dictionaries, because Mr. Dean Leclerc, who was the hiring manager and the decision maker, testified as to what they were looking for. The process is at page 299, I believe, and a couple pages there, how this decision was reached. If a decision is reached at the top level of the manufacturing department, that is a corporate mandate. And the court determined that Ms. Cox at the end of the road did not have information as to longevity. We disagree. Aren't you playing with stereotypes here when you're suggesting someone in their mid to late 50s couldn't serve and have longevity? Why would you assume that? Your Honor, because even the example given by the district court, what we did in our brief was to say, listen, you can have someone who could give three years and someone who could give 15. Certainly, if you are an 80-year-old Puerto Rican, you could have provided the locality, but not the longevity. The longevity, one of its exceptions or acceptations is long time in service. And that is what Sildon was looking for. But if you're 55, you could provide longevity. Yes. If you're 60, you can provide longevity. Yes. But that doesn't mean that is not an age-based consideration that tainted the entire process. In addition. So you're saying an employer can't have a legitimate desire that if it brings someone on, trains them, they get ready, they get established, they set long-term plans, that an employer can't prefer that it's got an employee that will be around for at least five or six years? Not at all. Not at all. But the thing is that in this case, that's not what they were looking for. They were having a problem that they were addressing. As a matter of fact, Sildon's, the reality in Sildon is that people tend to work for a long time. But that was. It sounded like the problem they were addressing is that they were bringing people over who were not used to Puerto Rico, quite frankly, and they were here for a while and left, which I don't know how anybody could do that. But notwithstanding that, that seems to be as rational as any other explanation as to what they were trying to do. They were trying to find somebody who loved Puerto Rican culture and who could provide longevity or stability in that employment position. Well, see, even the district court found that there was a discriminatory interpretation of the term longevity. That is in the opinion. If you add that also with the comments, the statements by Ms. Cox as to the fact that Sildon was discriminating in the search for this position, which the court ruled that it was hearsay, then, you know, if we consider that that information, it is impossible to rule this on summary judgment. We have a statement. If we take that statement and deem that the district court should have said it was admissible, then we've got that they have a preference for someone who's under late 50s, right? That would be the. What evidence is there that the defendant knew that your client was older than 55 or 56 when they made their decision? The thing is, I believe this case is quite typical. I mean, quite atypical in the sense that. Simple question. Is there any evidence that the defendant knew your client's age? No. But that is not necessary. Because. Wait a minute. You say no. I mean, what. I thought there was evidence in this record that OKIA, which was, I gather, in partnership with the TPI, that they specifically asked your client to provide his age and date. Is that not correct? It is correct, Your Honor. The thing is that. Okay. So now that's not Silgen. There's no indication that they asked for his age and perhaps no indication that they, Silgen, independently of what OKIA knew, was aware of the age. But I gather it's your position that they were employed by Silgen to do this talent search. If they were aware of the age, if they asked for the age, that that can be imputed to Silgen. Is that your position? I want to talk a little bit about the OKIA age statement. Because the thing with that text, as a matter of fact, that's how the case came to the office. And I said, wow, what is this? I've never seen it. The thing with that test is that that happens in April of 2018. Mr. Carreras was disqualified in February. So our argument is that that's only corroborating evidence. But the seminal decision is the decision of management to look for someone who could provide longevity. And that happened in 2017. So at the time that Mr. Carreras was applying and was under consideration, that was the consideration. How longevity gets to Ms. Cox? It goes from the management meeting to Ms. LeClaire, who's the manufacturing director, to Ms. Tammy Pockett, who's the HR manager who is assisting Ms. LeClaire in the hiring of this position. And Ms. Pockett has to tell Ms. Cox about the expectation of management. At the time the decision was made, and I looked very carefully for this because I know that you can figure these things out, scrutinizing certain documents. If you look at his resume or CVS or whatever it is, as well as his employment application, there's absolutely nothing on either of those documents that would give his proximate age. It looks like he did it in such a way as to be careful not to demonstrate what his age was. I don't think it was Carreras who did it. I think it was Silgan who did it, and that's one of the problems. The application? I'm talking about his application. No, in making sure. No, no, because it's a Silgan application. It's a format by Silgan. So they're not asking for age. As a matter of fact, that was an allegation of the complaint. Mr. Carreras is outside of the company. He's not. If it was not for that text in April. But what is the knowledge that at the time the decision was made that they knew what his age was? The thing is, Your Honor, for terms of summary judgment, the production of direct evidence of age discrimination is sufficient to defeat summary judgment. You need causation. I'm sorry? You need causation. I will need causation at trial, Your Honor, but not at this point because they're not what they're telling me is what I need to do on summary judgment is to create a genuine issue as to their reasoning for taking the decision. As I understand what you're saying, if we look at the record, what it shows about the knowledge of the people who actually made the decision not to hire your client, none of them knew his age. You mean the decision makers? Yes. I don't think that's relevant. Okay. I understand you don't think it's relevant, but thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce themselves on the record and begin? Good afternoon, Your Honors, and those present in the court. For the record, Pedro Jaime Torres Diaz on behalf of Selgin, the appellee in this case. Your Honors, as it was apparent from the question and the argument, we believe that this case really boils down to one uncontested fact that as the district court indicated, is fatal to Mr. Carreras' claim. And appellant did not address it, nor did he have an explanation, and in fact called it irrelevant. And that is that as of the time that Selgin disqualified Mr. Carreras from consideration back in February of 2018, because of those pre-employment test results, nobody at Selgin knew, nor could they have assumed through Judge Thompson's point, what Mr. Carreras' age was or what his date of birth was. In fact, it is an admitted fact in this case, and I quote, that Carreras does not have evidence in his possession that establishes that he provided his age or date of birth to Selgin. And those facts are fatal for two reasons, I submit. Number one, because it is Mr. Carreras' burden to establish that age was the reason why he was disqualified as this court held in Acevedo, Bahia versus Novartis, citing Gross versus ZBL Financial from the Supreme Court. Second, and here is the Second Circuit of the Court of Appeals put it succinctly in Woodman versus WWR, and I quote, a defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant. And the Supreme Court in... Counsel? Yes. I mentioned in questioning opposing counsel the fact that OCAIA, which was part of this talent search, they asked for Mr. Carreras' age, date of birth, is that correct? Just answer that question, is that correct? In April of 2018, two months after Mr. Carreras had already been disqualified because of his employment test and taken out of consideration, OCAIA sent a text message and asked Mr. Carreras for his age, two months after. Well, why would they do that if he was no longer being considered for the position? We do not know. The record does not show why, but the record does show that Silgan did not ask OCAIA or TPI to go reach out to Mr. Carreras after he had been disqualified back in February of 2018. That disqualification reason and decision had been communicated to Ms. Cox by Ms. Parque via email in February of 2018. And Ms. Cox contacted OCAIA in March of 2018 and said, Silgan is passing on Carreras because he didn't do well on the test. So after that, there is no record evidence whatsoever that anybody at Silgan talked to anybody at OCAIA or TPI to go back to Mr. Carreras. There's nothing contradicting that decision by Silgan that he had been disqualified as of February of 2018. I thought the timeframe is obviously critical, and I don't purport to have a precise awareness of the timeframe, but I thought there was a suggestion in this record that contrary to the representation, that when Silgan became aware of the fact that he had not done as well as he should have for purposes of being considered for this job, that in fact, some months later, when he supposedly had been disqualified because of this test score, he was in fact still being considered for the job. He had not been disqualified. Isn't there evidence in the record to that effect that he was still under consideration despite the poor performance on an aspect of the employment testing? None, Your Honor, other than the fact that OCAIA took it upon themselves to call Mr. Carreras again. But there's no evidence in the record that Ms. Cox told Carreras, told OCAIA something different than what she had told already OCAIA in March of 2018 that Silgan was passing on Carreras. And that is clearly on the record. And it is an admitted fact, in fact, that Ms. Cox emailed OCAIA on March 19, 2018 to say, Silgan passed on Carreras because of the test scores. Why OCAIA then saw it fit to call Mr. Carreras in April, two months after being disqualified, there is no record evidence explaining that. But there's also no record evidence that there was an instruction from Silgan or even Ms. Cox to go call Mr. Carreras back. There is nothing in the record contradicting the one communication between Silgan, between, sorry, between Talent Partners or Ms. Cox and OCAIA saying Silgan is passing on Carreras. There is no other record evidence indicating that somehow Mr. Carreras was back in the running. In fact, there is consistent testimony from all of the key witnesses from Silgan saying that once Mr. Carreras obtained a review score, that was the end of the road for him. Does the record show what OCAIA's business was generally? Counsel, it's kind enough to indicate that, yes, it does. And they are a subcontractor and they were helping, in this case, Talent Partners with locating potential candidates to fill different positions. And, in fact. I mean, do they have other clients? Does the record show that? I do not know that. OCAIA is like a wholly owned subsidiary of Silgan. OCAIA is not a wholly owned subsidiary of Silgan, no. Did OCAIA and Silgan have a written contract? No, Your Honor. Their written contract was between Talent Partners and Silgan. In what way was OCAIA working with TPI? What was that relationship? Ms. Cox explained in the position that because she was a company of one, she sometimes recruited other companies or entered into agreement with other companies that would help her source potential candidates so that the requests that are made of her can be filled. She says, I'm only one, and OCAIA has many people that can call candidates and source them, so I rely on what they can feed me so that I can feed my clients. So to the extent that TPI turned to OCAIA to help it with this request from Silgan, TPI did that on its own. Silgan was not part of the decision to bring OCAIA into this mix. Is that your position? That is correct, Your Honor. Were they aware that they had been brought into the mix? I do not believe so, no, Your Honor. I do not believe so. And there's no record evidence indicating otherwise, to my knowledge. So just with respect to these statements of Cox suggesting that because of their experiences with having trouble finding people to stay for an appropriate length of time in this position that's at issue here, that they would not look favorably on applicants who were in their late 50s, 58 or so, the judge seemed to take the view that that preference could not be attributed at all to Silgan, that to use the rules of evidence that would not be an omission of a party opponent. How can it be that since clearly Silgan did ask TPI to carry out this work for it, why shouldn't that be attributed to Silgan? What she was saying, why should that not be viewed as a reflection of how Silgan was viewing this job search? Two very strong reasons that are supported by the record, Your Honor. Number one, during her deposition, she stated repeatedly that no one at Silgan imposed that age requirement. No one at Silgan imposed that age requirement. And she also stated repeatedly that what she included in that email was based on her opinion, including personal facts that included the fact that her husband had retired at 57, that there were a number of, if I may finish my thought to answer just to this question, that there were a number of managers at Silgan who were close to retirement age but couldn't retire because there weren't people with sufficient experience in the industry, which I should add, if Silgan had a lot of people close to retirement age, I think it dispels the notion that Silgan discriminates on the basis of age. And lastly, Ms. Cox indicated that she was trying to find factors that made candidates more palatable and acceptable to Silgan so that she could collect her $16,000 referral fee. I hope that answers Your Honor's question. Thank you. Thank you, Your Honor. Permission to withdraw. Thank you, counsel. That concludes argument in this case.